## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **ERICSSON INC., AND TELEFONAKTIEBOLAGET LM ERICSSON,** | |
| **Plaintiff,** | **Civil Action No.  6:22-cv-61** |
| **vs.** | |
| **APPLE, INC.,** | **JURY TRIAL** |
| **Defendant.** | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson") file this Original Complaint for Patent Infringement against Apple, Inc. ("Apple"), and allege as follows:

### NATURE OF THE ACTION

1.      For more than four decades, Ericsson has pioneered the development of the modern cellular network. Ericsson develops and sells infrastructure equipment that makes up the backbone of modern networks; that is, the base stations and cell tower equipment that mobile phones communicate with. Major mobile network operators all over the world buy equipment and/or services from Ericsson. Ericsson manages networks that serve more than one billion subscribers globally, and Ericsson's equipment is found in more than one hundred and eighty countries.

2.      Ericsson is widely viewed as one of the leading innovators in the field of cellular communications. Due to the work of more than twenty-six thousand Ericsson research and

1

development employees, Ericsson's inventions are a valuable part of the fundamental technology used in phones and cellular networks worldwide, providing improved performance and new features for the benefit of consumers. Worldwide, more than forty percent of all mobile phone calls are made through Ericsson networks. Ericsson employs approximately ten thousand people in North America, including a substantial number of employees in the United States.

3.      Ericsson has a long history of innovative technical contributions, including the Asserted Patents. In addition, some of Ericsson's other accomplishments include:

- 1878: Ericsson sold its first telephone;
- 1977: Ericsson introduced the world's first digital telephone exchange;
- 1981: Ericsson introduced its first mobile telephone system, NMT;
- 1991: Ericsson launched 2G mobile phones and the world's first 2G network;
- 1994: Ericsson invented Bluetooth wireless technology;
- 2001: Ericsson made the world's first 3G wireless call for Vodafone UK;
- 2009: Ericsson started the world's first 4G network and made the first 4G call;
- 2010: Ericsson equipment serving over two billion mobile subscribers;
- 2013: Ericsson serving 500+ cellular operators in 180+ countries;
- 2014: European Patent Office selected Ericsson inventors as finalists for the European Inventor Award, based on contributions to 4G/LTE;
- 2015: Former Ericsson engineer Jaap Haartsen was inducted into the National Inventors Hall of Fame for Bluetooth Wireless Technology;
- 2018: Ericsson had submitted over 10,000 technical contributions to 5G standards; and
- 2021  Ericsson USA 5G "Smart Factory" recognized as "Global Lighthouse" by the World Economic Forum.

4.      As a result of its extensive research and development efforts, Ericsson has been awarded more than fifty-seven thousand patents worldwide.

5.      Apple is the largest smartphone manufacturer in the United States and has in the past taken a license to Ericsson's patents. Apple first licensed Ericsson's patents in 2008 when it released the first iPhone. In 2015, Apple and Ericsson executed another global cross-license,

covering both parties' patents related to the 2G, 3G, and 4G cellular standards.  Based on the expiration of those licenses, Apple is no longer licensed to Ericsson's patents.

## THE PARTIES

6.      Plaintiff Ericsson Inc. is a Delaware corporation with its principal place of business at 6300 Legacy Drive, Plano, Texas 75024.

7.      Plaintiff Telefonaktiebolaget LM Ericsson is a corporation organized under the laws of the Kingdom of Sweden with its principal place of business at Torshamnsgatan 21, Kista, 164 83, Stockholm, Sweden.

8.      Apple is a California corporation having a principal place of business located at 1 Infinite Loop, Cupertino, California 95014, and regular and established places of business at 12535 Riata Vista Circle, Austin, Texas and 5501 West Parmer Lane, Austin, Texas.

## JURISDICTION AND VENUE

9.      This is an action arising under the patent laws of the United States, 35 U.S.C. § 271. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

10.     Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Defendant has committed acts of infringement and has a regular and established place of business in this District as set forth below.

11.     Apple maintains an office in Austin, Texas at "West Parmer Lane and Riata Vista Circle, where most of its 7,000 Austin employees work."  (*See* Apple checks in with 192-room hotel for billion-dollar Northwest Austin campus, CultureMap Austin (available at https://austin.culturemap.com/news/city-life/05-20-20-apple-adds-surprising-element-to-1-billion-campus-in-northwest-austin/.)    This "1.1 million-square-foot campus, which was

completed in 2016, features seven office buildings on 38 acres" and "represents Apple's largest hub outside its $5 billion headquarters in Cupertino, California." (*Id.*)  In addition, Apple has stated that it has "has broken ground on its new $1 billion, 3-million-square-foot campus" near its existing campus.   (*See* https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/.) This new campus "will initially house 5,000 employees, with the capacity to grow to 15,000, and is expected to open in 2022." (*Id.*)  All told, "Apple is poised to become Austin's largest private employer in the not-too-distant future." (*See* Apple checks in with 192-room hotel for billion-dollar Northwest Austin campus, CultureMap Austin.)

12.     In addition to its Parmer Lane and Riata Vista campuses, Apple owns and operates at least five other physical places of business in this District.  These include three retail spaces in Austin, one retail space in San Antonio, and one retail space in El Paso.  In such retail spaces, Apple markets, sells, and services revenue directly from the products accused of infringement in this case.

13.     In addition to the approximately 7,000 current employees in Austin, Apple's Careers at Apple website currently lists over 600 jobs available in the Austin area, including 191 jobs related to its iPhone products. (*See* https://jobs.apple.com/en-us/search?location=austin-AST.)

14.     This Court has personal jurisdiction over Apple.  Apple has continuous and systematic business contacts with the State of Texas.  In addition, Apple conducts its business extensively throughout Texas and derives substantial revenue in Texas, by shipping, distributing, offering for sale, selling, and advertising (including the provision of an interactive web page) its products and/or services in the State of Texas and the Western District of Texas. Apple has

purposefully and voluntarily placed in the stream of commerce one or more products and/or services that practice the Asserted Patents (as set forth in ¶¶ 15-22 below) with the intention and expectation that they will be purchased and used by consumers in the Western District of Texas.

## THE ASSERTED PATENTS

15.     U.S. Patent No. 7,151,430 ("the '430 Patent"), entitled "Method of and Inductor Layout for Reduced VCO Coupling," was duly and legally issued to inventor Thomas Mattsson on December 19, 2006. Ericsson owns by assignment the entire right, title, and interest in the '430 patent and is entitled to sue for past and future infringement.

16.     U.S. Patent No. 7,957,770 ("the '770 Patent"), entitled "Mobile Communication Terminal for Providing Tactile Interface," was duly and legally issued to inventors Hyunjun An, Ju-Nam Kim, and Min Hak Lee on June 7, 2011. Ericsson owns by assignment the entire right, title, and interest in the '770 Patent and is entitled to sue for past and future infringement.

17.     U.S. Patent No. 8,472,999 ("the '999 Patent"), entitled "Method and System for Enabling Dual Standby State in a Wireless Communication System," was duly and legally issued to inventor Xuejuan Zhang on June 25, 2013. Ericsson owns by assignment the entire right, title, and interest in the '999 Patent and is entitled to sue for past and future infringement.

18.     U.S. Patent No. 8,792,454 ("the '454 Patent"), entitled "Secure and Seamless WAN-LAN Roaming," was duly and legally issued to inventors Kenichi Taniuchi, Tao Zhang, Prathima Agrawal, Ashutosh Dutta, Sunil Madhani, Shinichi Baba, Kensaku Fujimoto, Yasuhiro Katsube, Toshikazu Kodama, and Yoshihiro Ohba on July 29, 2014. Ericsson owns by assignment the entire right, title, and interest in the '454 Patent and is entitled to sue for past and future infringement.

19.      U.S. Patent No. 9,509,273 ("the '273 Patent"), entitled "Transformer Filter Arrangement," was duly and legally issued to inventors Stefan Andersson, Fenghao Mu, and Johan Wernehag on November 29, 2016. Ericsson owns by assignment the entire right, title, and interest in the '273 Patent and is entitled to sue for past and future infringement.

20.      U.S. Patent No. 9,705,400 ("the '400 Patent"), entitled "Reconfigurable Output Stage," was duly and legally issued to inventors Philippe Sirito-Olivier, Patrizia Milazzo, and Angelo Nagari on July 11, 2017. Ericsson owns by assignment the entire right, title, and interest in the '400 Patent and is entitled to sue for past and future infringement.

21.      U.S. Patent No. 9,853,621 ("the '621 Patent"), entitled "Transformer Filter Arrangement," was duly and legally issued to inventors Stefan Andersson, Fenghao Mu, and Johan Wernehag on December 26, 2017. Ericsson owns by assignment the entire right, title, and interest in the '621 Patent and is entitled to sue for past and future infringement.

22.      U.S. Patent No. 10,880,794 ("the '794 Patent"), entitled "Inter-Band Handover of the Same Physical Frequency," was duly and legally issued to inventors Peter Alriksson and Maria Ulander on December 29, 2020. Ericsson owns by assignment the entire right, title, and interest in the '794 Patent and is entitled to sue for past and future infringement.

### Count I: Claim for Patent Infringement of the '430 Patent

23.      Ericsson repeats and realleges the allegations in paragraphs 1-22 as if fully set forth herein.

24.      Apple has infringed, contributed to the infringement of, and/or induced infringement of the '430 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United

States, products and/or methods covered by one or more claims of the '430 Patent including, but not limited to, mobile telephones, tablet computers, and smart watches, including iPhones, iPads, Apple Watches, and Apple TV (referred to herein as the "'430 Accused Products").

25.     For example, the '430 Accused Products infringe at least claims 2, 4, 6-8, 11, 14, and 16-18 of the '430 Patent. Apple makes, uses, sells, offers for sale, imports, exports, supplies or distributes within the United States these devices, which are covered by or made by a process covered by the claims of the '430 Patent, and thus directly infringes the '430 Patent.

26.     Apple indirectly infringes the '430 Patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers in this District and throughout the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, or end-users of the '430 Accused Products, who perform each step of the claimed invention as directed by Apple. Apple received actual notice of the '430 Patent at least as early as the filing of Ericsson's complaint against Apple in the Eastern District of Texas (2:15-cv-288), in which Ericsson also asserted the '430 Patent; and the filing of this Complaint.

27.     Apple affirmatively acts to sell the Accused Products, cause the Accused Products to be manufactured, and provide directions, instructions, schematics, diagrams, or designs to its manufacturers, resellers, or end-users to make or use the Accused Products in a manner that directly infringes the '430 Patent.  Through its manufacture and sales of the '430 Accused Products, Apple performed the acts that constitute induced infringement with knowledge or willful blindness that the induced acts would constitute infringement.

28.     Apple also indirectly infringes the '430 Patent by contributing to infringement by others, such as manufacturers, resellers and end-users, in accordance with 35 U.S.C. § 271(c) in

this District and throughout the United States. Direct infringement is the result of activities performed by manufacturers, resellers and end-users of the '430 Accused Products.

29. Apple's affirmative acts of selling the '430 Accused Products and causing the '430 Accused Products to be manufactured and sold contribute to Apple's manufacturers, resellers and end-users making or using the '430 Accused Products in a normal and customary way that infringes the '430 Patent. The '430 Accused Products constitute the material part of Ericsson's patented invention, have no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use to infringe the '430 Patent.

30. Apple's infringement of the '430 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to Ericsson pursuant to 35 U.S.C. §§ 284-285.

31. By way of example only, Apple's iPhone 13 infringes claim 1 of the '430 Patent as set forth in the claim chart attached as Exhibit A.

## Count II: Claim for Patent Infringement of the '770 Patent

32. Ericsson repeats and realleges the allegations in paragraphs 1-31 as if fully set forth herein.

33. Apple has infringed, contributed to the infringement of, and/or induced infringement of the '770 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '770 Patent including, but not limited to, mobile telephones, tablet computers, and smart watches, including iPhones, iPads,

8

Apple Watches, and Apple TV (referred to throughout the remainder of this Complaint as "the Accused Products").

34.     For example, the Accused Products infringe at least claims 1, 2, 4-10, and 12-15 of the '770 Patent. Apple makes, uses, sells, offers for sale, imports, exports, supplies or distributes within the United States these devices, which are covered by or made by a process covered by the claims of the '770 Patent, and thus directly infringes the '770 Patent.

35.     Apple indirectly infringes the '770 Patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers in this District and throughout the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, or end-users of the Accused Products, who perform each step of the claimed invention as directed by Apple. Apple received actual notice of the '770 Patent at least as early as the filing of this Complaint.

36.     Apple affirmatively acts to sell the Accused Products, cause the Accused Products to be manufactured, and provide directions, instructions, schematics, diagrams, or designs to its manufacturers, resellers, or end-users to make or use the Accused Products in a manner that directly infringes the '770 Patent.  Through its manufacture and sales of the Accused Products, Apple performed the acts that constitute induced infringement with knowledge or willful blindness that the induced acts would constitute infringement.

37.     Apple also indirectly infringes the '770 Patent by contributing to infringement by others, such as manufacturers, resellers and end-users, in accordance with 35 U.S.C. § 271(c) in this District and throughout the United States. Direct infringement is the result of activities performed by manufacturers, resellers and end-users of the Accused Products.

38.     Apple's affirmative acts of selling the Accused Products and causing the Accused Products to be manufactured and sold contribute to Apple's manufacturers, resellers, and end-users making or using the Accused Products in a normal and customary way that infringes the '770 Patent. The Accused Products constitute the material part of Ericsson's patented invention, have no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use to infringe the '770 Patent.

39.     Apple's infringement of the '770 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to Ericsson pursuant to 35 U.S.C. §§ 284-285.

40.     By way of example only, Apple's iPhone 13 infringes claim 1 of the '770 Patent as set forth in the claim chart attached as Exhibit B.

## Count III: Claim for Patent Infringement of the '999 Patent

41.     Ericsson repeats and realleges the allegations in paragraphs 1-40 as if fully set forth herein.

42.     Apple has infringed, contributed to the infringement of, and/or induced infringement of the '999 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '999 Patent including, but not limited to, mobile telephones, tablet computers, and smart watches, including the Accused Products.

43.     For example, the Accused Products infringe at least claims 11-17 of the '999 Patent. Apple makes, uses, sells, offers for sale, imports, exports, supplies or distributes within the United States these devices, which are covered by or made by a process covered by the claims of the '999 Patent, and thus directly infringes the '999 Patent.

44.     Apple indirectly infringes the '999 Patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers in this District and throughout the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, or end-users of the Accused Products, who perform each step of the claimed invention as directed by Apple. Apple received actual notice of the '999 Patent at least as early as the filing of this Complaint.

45.     Apple affirmatively acts to sell the Accused Products, cause the Accused Products to be manufactured, and provide directions, instructions, schematics, diagrams, or designs to its manufacturers, resellers, or end-users to make or use the Accused Products in a manner that directly infringes the '999 Patent.  Through its manufacture and sales of the Accused Products, Apple performed the acts that constitute induced infringement with knowledge or willful blindness that the induced acts would constitute infringement.

46.     Apple also indirectly infringes the '999 Patent by contributing to infringement by others, such as manufacturers, resellers and end-users, in accordance with 35 U.S.C. § 271(c) in this District and throughout the United States. Direct infringement is the result of activities performed by manufacturers, resellers and end-users of the Accused Products.

47.     Apple's affirmative acts of selling the Accused Products and causing the Accused Products to be manufactured and sold contribute to Apple's manufacturers, resellers and end-users

making or using the Accused Products in a normal and customary way that infringes the '999 Patent. The Accused Products constitute the material part of Ericsson's patented invention, have no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use to infringe the '999 Patent.

48.     Apple's infringement of the '999 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to Ericsson pursuant to 35 U.S.C. §§ 284-285.

49.     By way of example only, Apple's iPhone 13 infringes claim 11 of the '999 Patent as set forth in the claim chart attached as Exhibit C.

### Count IV: Claim for Patent Infringement of the '454 Patent

50.     Ericsson repeats and realleges the allegations in paragraphs 1-49 as if fully set forth herein.

51.     Apple has infringed, contributed to the infringement of, and/or induced infringement of the '454 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '454 Patent including, but not limited to, mobile telephones, tablet computers, and smart watches, including the Accused Products.

52.     For example, the Accused Products infringe at least claims 1-2 and 4-9 of the '454 Patent. Apple makes, uses, sells, offers for sale, imports, exports, supplies or distributes within the

United States these devices, which are covered by or made by a process covered by the claims of the '454 Patent, and thus directly infringes the '454 Patent.

53. Apple indirectly infringes the '454 Patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers in this District and throughout the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, or end-users of the Accused Products, who perform each step of the claimed invention as directed by Apple. Apple received actual notice of the '454 Patent at least as early as the filing of this Complaint.

54. Apple affirmatively acts to sell the Accused Products, cause the Accused Products to be manufactured, and provide directions, instructions, schematics, diagrams, or designs to its manufacturers, resellers, or end-users to make or use the Accused Products in a manner that directly infringes the '454 Patent. Through its manufacture and sales of the Accused Products, Apple performed the acts that constitute induced infringement with knowledge or willful blindness that the induced acts would constitute infringement.

55. Apple also indirectly infringes the '454 Patent by contributing to infringement by others, such as manufacturers, resellers and end-users, in accordance with 35 U.S.C. § 271(c) in this District and throughout the United States. Direct infringement is the result of activities performed by manufacturers, resellers and end-users of the Accused Products.

56. Apple's affirmative acts of selling the Accused Products and causing the Accused Products to be manufactured and sold contribute to Apple's manufacturers, resellers and end-users making or using the Accused Products in a normal and customary way that infringes the '454 Patent. The Accused Products constitute the material part of Ericsson's patented invention, have

no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use to infringe the '454 Patent.

57.     Apple's infringement of the '454 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to Ericsson pursuant to 35 U.S.C. §§ 284-285.

58.     By way of example only, Apple's iPhone 13 infringes claim 1 of the '454 Patent as set forth in the claim chart attached as Exhibit D.

## Count V: Claim for Patent Infringement of the '273 Patent

59.     Ericsson repeats and realleges the allegations in paragraphs 1-58 as if fully set forth herein.

60.     Apple has infringed, contributed to the infringement of, and/or induced infringement of the '273 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '273 Patent including, but not limited to, mobile telephones, tablet computers, and smart watches, including the Accused Products.

61.     For example, the Accused Products infringe at least claims 1-3, 13, and 18 of the '273 Patent. Apple makes, uses, sells, offers for sale, imports, exports, supplies or distributes within the United States these devices, which are covered by or made by a process covered by the claims of the '273 Patent, and thus directly infringes the '273 Patent.

62.     Apple indirectly infringes the '273 Patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers in this District and throughout the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, or end-users of the Accused Products, who perform each step of the claimed invention as directed by Apple. Apple received actual notice of the '273 Patent at least as early as the filing of this Complaint.

63.     Apple affirmatively acts to sell the Accused Products, cause the Accused Products to be manufactured, and provide directions, instructions, schematics, diagrams, or designs to its manufacturers, resellers, or end-users to make or use the Accused Products in a manner that directly infringes the '273 Patent.  Through its manufacture and sales of the Accused Products, Apple performed the acts that constitute induced infringement with knowledge or willful blindness that the induced acts would constitute infringement.

64.     Apple also indirectly infringes the '273 Patent by contributing to infringement by others, such as manufacturers, resellers and end-users, in accordance with 35 U.S.C. § 271(c) in this District and throughout the United States. Direct infringement is the result of activities performed by manufacturers, resellers and end-users of the Accused Products.

65.     Apple's affirmative acts of selling the Accused Products and causing the Accused Products to be manufactured and sold contribute to Apple's manufacturers, resellers and end-users making or using the Accused Products in a normal and customary way that infringes the '273 Patent. The Accused Products constitute the material part of Ericsson's patented invention, have no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use to infringe the '273 Patent.

66.     Apple's infringement of the '273 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to Ericsson pursuant to 35 U.S.C. §§ 284-285.

67.     By way of example only, Apple's iPhone 13 infringes claim 1 of the '273 Patent as set forth in the claim chart attached as Exhibit E.

### Count VI: Claim for Patent Infringement of the '400 Patent

68.     Ericsson repeats and realleges the allegations in paragraphs 1-67 as if fully set forth herein.

69.     Apple has infringed, contributed to the infringement of, and/or induced infringement of the '400 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '400 Patent including, but not limited to, mobile telephones, tablet computers, and smart watches, including the Accused Products.

70.     For example, the Accused Products infringe at least claims 1, 2, 8, 10, and 13-15 of the '400 Patent. Apple makes, uses, sells, offers for sale, imports, exports, supplies or distributes within the United States these devices, which are covered by or made by a process covered by the claims of the '400 Patent, and thus directly infringes the '400 Patent.

71.     Apple indirectly infringes the '400 Patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers in this District and throughout the United States. For example, direct infringement is the result of activities performed

by manufacturers, resellers, or end-users of the Accused Products, who perform each step of the claimed invention as directed by Apple. Apple received actual notice of the '400 Patent at least as early as the filing of this Complaint.

72.     Apple affirmatively acts to sell the Accused Products, cause the Accused Products to be manufactured, and provide directions, instructions, schematics, diagrams, or designs to its manufacturers, resellers, or end-users to make or use the Accused Products in a manner that directly infringes the '400 Patent.  Through its manufacture and sales of the Accused Products, Apple performed the acts that constitute induced infringement with knowledge or willful blindness that the induced acts would constitute infringement.

73.     Apple also indirectly infringes the '400 Patent by contributing to infringement by others, such as manufacturers, resellers and end-users, in accordance with 35 U.S.C. § 271(c) in this District and throughout the United States. Direct infringement is the result of activities performed by manufacturers, resellers and end-users of the Accused Products.

74.     Apple's affirmative acts of selling the Accused Products and causing the Accused Products to be manufactured and sold contribute to Apple's manufacturers, resellers and end-users making or using the Accused Products in a normal and customary way that infringes the '400 Patent. The Accused Products constitute the material part of Ericsson's patented invention, have no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use to infringe the '400 Patent.

75.     Apple's infringement of the '400 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for

up to three times the actual damages awarded and attorney's fees to Ericsson pursuant to 35 U.S.C. §§ 284-285.

76. By way of example only, Apple's iPhone 13 infringes claim 1 of the '400 Patent as set forth in the claim chart attached as Exhibit F.

## **Count VII: Claim for Patent Infringement of the '621 Patent**

77. Ericsson repeats and realleges the allegations in paragraphs 1-76 as if fully set forth herein.

78. Apple has infringed, contributed to the infringement of, and/or induced infringement of the '621 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '621 Patent including, but not limited to, mobile telephones, tablet computers, and smart watches, including the Accused Products.

79. For example, the Accused Products infringe at least claims 1, 12, and 18-20 of the '621 Patent. Apple makes, uses, sells, offers for sale, imports, exports, supplies or distributes within the United States these devices, which are covered by or made by a process covered by the claims of the '621 Patent, and thus directly infringes the '621 Patent.

80. Apple indirectly infringes the '621 Patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers in this District and throughout the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, or end-users of the Accused Products, who perform each step of the

claimed invention as directed by Apple. Apple received actual notice of the '621 Patent at least as early as the filing of this Complaint.

81.     Apple affirmatively acts to sell the Accused Products, cause the Accused Products to be manufactured, and provide directions, instructions, schematics, diagrams, or designs to its manufacturers, resellers, or end-users to make or use the Accused Products in a manner that directly infringes the '621 Patent.  Through its manufacture and sales of the Accused Products, Apple performed the acts that constitute induced infringement with knowledge or willful blindness that the induced acts would constitute infringement.

82.     Apple also indirectly infringes the '621 Patent by contributing to infringement by others, such as manufacturers, resellers and end-users, in accordance with 35 U.S.C. § 271(c) in this District and throughout the United States. Direct infringement is the result of activities performed by manufacturers, resellers and end-users of the Accused Products.

83.     Apple's affirmative acts of selling the Accused Products and causing the Accused Products to be manufactured and sold contribute to Apple's manufacturers, resellers and end-users making or using the Accused Products in a normal and customary way that infringes the '621 Patent. The Accused Products constitute the material part of Ericsson's patented invention, have no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use to infringe the '621 Patent.

84.     Apple's infringement of the '621 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to Ericsson pursuant to 35 U.S.C. §§ 284-285.

85.     By way of example only, Apple's iPhone 13 infringes claim 1 of the '621 Patent as set forth in the claim chart attached as Exhibit G.

## Count VIII: Claim for Patent Infringement of the '794 Patent

86.     Ericsson repeats and realleges the allegations in paragraphs 1-85 as if fully set forth herein.

87.     Apple has infringed, contributed to the infringement of, and/or induced infringement of the '794 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '794 Patent including, but not limited to, mobile telephones, tablet computers, and smart watches, including the Accused Products.

88.     For example, the Accused Products infringe at least claims 1-3, 5-8, 10-13, 15-18, and 20 of the '794 Patent. Apple makes, uses, sells, offers for sale, imports, exports, supplies or distributes within the United States these devices, which are covered by or made by a process covered by the claims of the '794 Patent, and thus directly infringes the '794 Patent.

89.     Apple indirectly infringes the '794 Patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers in this District and throughout the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, or end-users of the Accused Products, who perform each step of the claimed invention as directed by Apple. Apple received actual notice of the '794 Patent at least as early as the filing of this Complaint.

90.     Apple affirmatively acts to sell the Accused Products, cause the Accused Products to be manufactured, and provide directions, instructions, schematics, diagrams, or designs to its manufacturers, resellers, or end-users to make or use the Accused Products in a manner that directly infringes the '794 Patent.  Through its manufacture and sales of the Accused Products, Apple performed the acts that constitute induced infringement with knowledge or willful blindness that the induced acts would constitute infringement.

91.     Apple also indirectly infringes the '794 Patent by contributing to infringement by others, such as manufacturers, resellers and end-users, in accordance with 35 U.S.C. § 271(c) in this District and throughout the United States. Direct infringement is the result of activities performed by manufacturers, resellers and end-users of the Accused Products.

92.     Apple's affirmative acts of selling the Accused Products and causing the Accused Products to be manufactured and sold contribute to Apple's manufacturers, resellers and end-users making or using the Accused Products in a normal and customary way that infringes the '794 Patent. The Accused Products constitute the material part of Ericsson's patented invention, have no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use to infringe the '794 Patent.

93.     Apple's infringement of the '794 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to Ericsson pursuant to 35 U.S.C. §§ 284-285.

94.     By way of example only, Apple's iPhone 13 infringes claim 16 of the '794 Patent as set forth in the claim chart attached as Exhibit H.

## DEMAND FOR JURY TRIAL

95.     Ericsson hereby demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Ericsson respectfully requests that this Court enter judgment in its favor and grant the following relief:

A.  Adjudge that Apple infringes the Asserted Patents;

B.  Adjudge that Apple's infringement of the Asserted Patents was willful, and that Apple's continued infringement of the Asserted Patents is willful;

C.  Award Ericsson damages in an amount adequate to compensate Ericsson for Apple's infringement of the Asserted Patents, but in no event less than a reasonable royalty under 35 U.S.C. § 284;

D.  Award enhanced damages pursuant to 35 U.S.C. § 284;

E.  Award Ericsson pre-judgment and post-judgment interest to the full extent allowed under the law, as well as its costs;

F.  Enter an order finding that this is an exceptional case and awarding Ericsson its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

G.  Enter a permanent injunction against all Apple products found to infringe the Asserted Patents;

H.  Award, in lieu of an injunction, a compulsory forward royalty;

I.  Order an accounting of damages; and

J.  Award such other relief as the Court may deem appropriate and just under the circumstances.

**DATED**: January 17, 2022

Respectfully submitted,

*/s/ Thomas M. Melsheimer*
**Thomas M. Melsheimer**
Texas Bar No. 13922550
tmelsheimer@winston.com
**M. Brett Johnson**
Texas Bar No. 00790975
mbjohnson@winston.com
**Michael A. Bittner**
Texas Bar No. 24064905
mbittner@winston.com
**WINSTON & STRAWN LLP**
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500

**ATTORNEYS FOR PLAINTIFFS**